UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

SANJA DRINKS-BRUDER,

       Plaintiff,

    v.

CITY OF NIAGARA FALLS et al.,

       Defendants.

───────────────────────────────

22-CV-725-LJV
DECISION & ORDER

On September 23, 2022, the pro se plaintiff, Sanja Drinks-Bruder, commenced

this action under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"),

the Americans with Disabilities Act ("ADA"), and the New York State Human Rights Law

("NYSHRL").  Docket Item 1; *see* Docket Item 34 (amended complaint).  She sued the

City of Niagara Falls (the "City") and nine of its officers and employees (the "individual

defendants"): Mayor Robert Restaino; Corporation Counsel Christopher Mazur; former

Niagara Falls Police Department ("NFPD") Chief Thomas Licata; NFPD Chief John

Faso; NFPD Captains Michael Corcoran and Vincent Granto; NFPD Officer Gregory

Spagnolo;[1] and former Niagara Falls Police Club Presidents Michael Lee and Steven

Kerfoot, who also work for the NFPD.[2]  *See* Docket Items 1 and 34; *see also* Docket

───────────────

[1] The initial complaint and thus the official case caption misspell Spagnolo's
name as "Spagnola."  *See* Docket Item 16-1 at 2 n.1.  The Clerk of the Court shall
correct the docket accordingly.

[2] At some points in her initial complaint, Drinks-Bruder appeared to assert claims
against the City of Niagara Falls Civil Service Commission.  *See* Docket Item 1 at 11-
12.  But she did not include that entity in the list of defendants, *see id.* at 6-7, and it
does not appear to ever have been served.  For those reasons, this Court did not
address the claims against it in its previous order.  *See generally Drinks-Bruder*, 2023
WL 1094980 (W.D.N.Y. Mar. 13, 2024).  Drinks-Bruder does not refer to any claims

Items 15-1 and 16-1 (providing defendants' correct names and titles).  Drinks-Bruder alleges that the defendants discriminated against her because of her race and perceived disability status, retaliated against her, subjected her to a hostile work environment, and violated her right to due process during her time as an NFPD officer.  *See* Docket Items 1 and 34.

After the defendants moved to dismiss the complaint, Docket Items 15 and 16, this Court granted in part and denied in part those motions, Docket Item 31; *see Drinks-Bruder v. City of Niagara Falls*, 2024 WL 1094980 (W.D.N.Y. Mar. 13, 2024).  More specifically, the Court held that several of Drinks-Bruder's claims could proceed: her Title VII retaliation claim against the City; her due process claims against the City, Faso, Licata, and Corcoran; her NYSHRL retaliation claim against the City; and her punitive damage claims against Faso, Licata, and Corcoran.  *See id.* at *13.  But the Court dismissed her Title VII claims against the individual defendants, as well as her punitive damage claims against the City and the individual defendants in their official capacities. *Id.*  Finally, the Court held that unless Drinks-Bruder filed an amended complaint

---

against the Niagara Falls Civil Service Commission in her amended complaint.  *See* Docket Item 34.

In any event, "[i]n New York, agencies of a municipality are not suable entities because 'under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued.'"  *Chodkowski v. County of Nassau*, 2017 WL 10637956, at *5 (E.D.N.Y. Nov. 30, 2017) (alteration omitted) (quoting *Perez v. Ponte*, 236 F. Supp. 3d 590, 629 n.16 (E.D.N.Y. 2017)).  So even if Drinks-Bruder meant to raise claims against the Niagara Falls Civil Service Commission, this Court would dismiss them:  The City of Niagara Falls is the "true party in interest" and a claim against its administrative agency therefore cannot be maintained.  *See id.* (holding that because Nassau County was "the true party in interest," claims against Nassau County Civil Service Commission "must be dismissed").

addressing several identified deficiencies, the following claims also would be dismissed:
(1) her failure to accommodate claim; (2) her Title VII race discrimination and hostile
work environment claims against the City; (3) her due process claim against Restaino,
Mazur, Granto, Lee, Kerfoot, and Spagnolo; (4) her NYSHRL race discrimination and
hostile work environment claims; and (6) her NYSHRL retaliation claim against
Restaino, Mazur, Licata, Faso, Corcoran, Granto, Lee, Kerfoot, and Spagnolo. *Id.*

Drinks-Bruder then filed a "respon[se]" to the Court's decision and order, *see*
Docket Item 34, which this Court construed as her amended complaint, *see* Docket Item
35. About a month later, Lee, Kerfoot, and Spagnolo moved to dismiss the amended
complaint, Docket Item 37; later the same day, the City, Corcoran, Faso, Granto, Licata,
Mazur, and Restaino (the "City defendants") did the same, Docket Item 38. Drinks-
Bruder responded to both motions, Docket Items 42 and 43, and the defendants replied,
Docket Item 49 (Lee, Kerfoot, and Spagnolo's reply); Docket Item 50 (City defendants'
reply). Drinks-Bruder then filed "objections" to the defendants' replies, Docket Items 53
and 54, which this Court construed as sur-replies, *see* Docket Item 55.

About four months later, Drinks-Bruder moved to disqualify Robert Boreanaz and
his law firm from representing Lee, Kerfoot, and Spagnolo. Docket Item 59. Shortly
thereafter, she moved to disqualify counsel for the City defendants because they have
been "working with" Boreanaz on this case. Docket Item 61; *see id.* at 2.[3] Drinks-
Bruder also moved several times to amend her disqualification motions. Docket Items
60, 63, and 65. The defendants responded to Drinks-Bruder's disqualification motions,
Docket Items 68 and 69, and Drinks-Bruder replied, Docket Items 73, 74, and 75.

---

[3] Page numbers in docket citations refer to ECF pagination.

To the extent that Drinks-Bruder moves to amend her initial disqualification motions to include additional information, *see* Docket Items 60, 63, and 65, this Court grants those motions and treats her motions to disqualify counsel for both sets of defendants, Docket Items 59 and 61, as incorporating her subsequent filings, Docket Items 60, 63, and 65.  But because it grants the motion by Kerfoot, Lee, and Spagnolo to dismiss the amended complaint, it denies Drinks-Bruder's motion to disqualify counsel for those defendants as moot.  The Court also denies Drinks-Bruder's motion to disqualify the City defendants' counsel, and it grants in part and denies in part the City defendants' motion to dismiss.

## LEGAL PRINCIPLES

### I.    MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

### II.    MOTION TO DISQUALIFY COUNSEL

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'"  *Hempstead Video, Inc. v.*

*Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979)).  In ruling on such motions, courts should "attempt[] to balance 'a client's right freely to choose . . . counsel' against 'the need to maintain the highest standards of the profession.'"  *Id.* (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)).  And "it is well[ ]established [in this circuit] that '[m]otions to disqualify opposing counsel are viewed with disfavor . . . because they are often interposed for tactical reasons and result in unnecessary delay.'" *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 300 (E.D.N.Y. 2009) (alteration and some internal quotation marks omitted) (quoting *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991)).

## BACKGROUND[4]

### I.    FACTUAL OVERVIEW

In 1993, Drinks-Bruder began working for the NFPD, Docket Item 1 at 2, where she was a member of the Niagara Falls Police Club union, *see id.* at 47.  Throughout her employment, she suffered "many . . . instances of racism[ and] retaliation" that created a "hostile work environment."  *Id.* at 24.  The City "is the entity responsible for" the discrimination, retaliation, and harassment.  *Id.* at 9.  And the individual perpetrators of the "unlawful[,] unethical actions" were "white males and white females"; they

---

[4] The following facts are taken from the complaint and amended complaint, Docket Items 1 and 34; *see also infra* note 5.  On a motion to dismiss, courts "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

targeted Drinks-Bruder "because [she is] a [B]lack female" who "oppose[s] discrimination" by filing complaints or grievances "all the time." *Id.* at 42-43, 45.

Generally, the defendants either ignored or failed to adequately address Drinks-Bruder's many grievances. *See, e.g.*, *id.* at 9, 12, 15, 20. But her claims in this action focus primarily on events that followed an interaction between Drinks-Bruder and a racist prisoner in November 2019, including the defendants' insisting that Drinks-Bruder undergo an evaluation under New York Civil Service Law § 72; her refusal to do so; and her eventual suspension under New York Civil Service Law § 75. *See generally* Docket Item 1.

More specifically, Drinks-Bruder alleges that then NFPD Chief Licata and then Deputy Chief Faso told her that she "needed a mental evaluation" under New York Civil Service Law § 72 "because of" the incident with the racist prisoner in which defendant Spagnolo also was involved and because of the grievances she had filed. *See* Docket Item 1 at 14, 22-23, 36. But Drinks-Bruder refused to undergo such an exam, asserting that she had the right to do so. *See id.* at 14-15.

In January 2020, based on Drinks-Bruder's refusal to attend a section 72 examination, the City suspended her without pay under New York Civil Service Law § 75. *See* Docket Item 1 at 11, 15. Although she was told that she would be able to return to work, Faso would "suspend her again" every 30 days "for refusing to" sit for the section 72 exam. *See id.* at 16-17. And that pattern continued until January 2022, when she was placed on "administrative leave." *See id.* at 18.

## II.    PROCEDURAL HISTORY

In its previous decision giving Drinks-Bruder leave to amend certain claims, *see Drinks-Bruder*, 2024 WL 1094980, at *13, this Court advised her that "an amended complaint is intended to completely replace the prior complaint in the action and thus 'renders any prior complaint of no legal effect,'" *see id.* (alterations and emphasis omitted) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)).  And the Court explicitly told her that an amended complaint "must include all allegations against each of the defendants."  *Id.* (emphasis omitted).

Notwithstanding those instructions, Drinks-Bruder's "response" to this Court's order, Docket Item 34—which this Court treats as her amended complaint, *see* Docket Item 35—did not include many of the allegations in her initial complaint, *compare* Docket Item 1 *with* Docket Item 34.  Instead of submitting a new pleading setting forth the facts underlying her claims, Drinks-Bruder submitted what is essentially a running commentary on this Court's order, explaining why she believes it is incorrect and including several additional factual allegations and exhibits.  *See* Docket Item 34.

Despite Drinks-Bruder's failure to follow this Court's order, and in light of her pro se status and the fact that she may not have intended her submission to be an amended complaint, this Court liberally construes her submission as an amended complaint that incorporates the allegations in her original complaint, Docket Item 1.[5] Moreover, to the extent that Drinks-Bruder requests relief in the submission that this

---

[5] For that reason, in the analysis that follows, the Court assumes familiarity with the facts alleged in the original complaint, Docket Item 1*; see Drinks-Bruder*, 2024 WL 1094980, at *2-4 (summarizing facts), and refers as necessary to the additional allegations included in the amended complaint, Docket Item 34.

Court deems to be an amended complaint, the Court treats that submission as a motion for such relief.  In other words, the Court reads Drinks-Bruder's submission as broadly and liberally as possible—as both an amended complaint and as a motion—giving her the benefit of every doubt.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A pro se complaint is to be read liberally." (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999))).

## DISCUSSION

## I.    MOTION FOR RECONSIDERATION AND REQUEST FOR ORAL ARGUMENT

In her submission, Drinks-Bruder asks this Court to reconsider its conclusion that some of her claims should be dismissed—namely, her Title VII claims against the individual defendants and her claims for punitive damages against the City and the individual defendants in their official capacities.  *See* Docket Item 34 at 14, 40.  The Court construes that request as a motion for reconsideration.

The Second Circuit has held that "[t]he standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Drinks-Bruder has not pointed to any such material here, nor has she given this Court any reason to revisit its prior decision.  *See* Docket Item 34 at 14, 40.  Therefore, insofar as Drinks-Bruder moves for reconsideration, that motion is denied and the dismissed claims remain dismissed for the reasons explained in that decision.  *See Drinks-Bruder*, 2024 WL 1094980, at *6, *13.

Drinks-Bruder also argues that this Court should not dismiss any of her claims without first affording her an opportunity to participate in oral argument. *See* Docket Item 34 at 13-14. Indeed, she says, "[o]ral argument with cross[-]examination of all parties" would "allow[] the proper justice to everyone" and "would allow the complaint to be more clear as needed." *See id.*

While this Court is sympathetic to Drinks-Bruder's wish to be heard, "cross-examination" is not the function of—or even part of—oral argument. When a court, in its discretion, believes that argument from the parties or their representatives is necessary or might be helpful to flesh out issues, it hears from them at oral argument. But oral argument cannot be used to supplement the complaint or to conduct a mini-trial, as Drinks-Bruder seems to contemplate. In fact, the complaint must include a statement of the facts underlying each claim for a lawsuit to proceed, *see* Fed. R. Civ. P. 8, and a plaintiff cannot remedy deficiencies by opining about the facts in a courtroom. Therefore, and because the facts alleged are insufficient to support some of the claims that Drinks-Bruder wishes to raise, *see infra*; *see also Drinks-Bruder*, 2024 WL 1094980, at *5-13, oral argument is unnecessary.

## II.    CLAIMS AGAINST LEE, KERFOOT, AND SPAGNOLO

As noted above, this Court previously dismissed Drinks-Bruder's Title VII claims against Lee, Kerfoot, and Spagnolo, as well as her claims for punitive damages against those defendants in their official capacities. *See Drinks-Bruder*, 2024 WL 1094980, at *13. But it gave her leave to amend her complaint to state claims against those defendants for failure to accommodate under the ADA and state law; for race

discrimination, a hostile work environment, and retaliation under the NYSHRL; and for violating her right to due process. *See id.*

Drinks-Bruder's amended complaint includes only a handful of specific allegations about Lee, Kerfoot, and Spagnolo. *See* Docket Item 34. First, she says (as she did in her initial complaint) that Spagnolo fabricated a story about Drinks-Bruder's calling a "white female prisoner" who hurled racist slurs and acted in a racist manner toward Drinks-Bruder "a bitch"; she also says that Spagnolo lied in retaliation for "the discrimination complaint" that Drinks-Bruder "was filing." *See id.* at 1-6, 16, 27. Second, she says that "Lee knew of a[n] unlawful proceeding that was about to take place against [Drinks-Bruder] and instead of informing her[,] he lied[,] saying he knew nothing about it." *Id.* at 27. Third, she says that Kerfoot "stopped the supposed representation which allowed an unlawful [proceeding] to take place against" her. *Id.* Finally, she says that Lee, Kerfoot, and Spagnolo "all knew of the unlawful pending [proceedings under New York Civil Service Law § 72] before [those proceedings took] place and [were] aware of the unethical and illegal process and were in fact parties to it." *Id.* at 28.

### A.    Failure to Accommodate Claims

In its earlier decision, this Court noted that Drinks-Bruder checked a line in the complaint indicating that the defendants failed to provide her with a reasonable accommodation. *Drinks-Bruder*, 2024 WL 1094980, at *1 n.1 (citing Docket Item 1 at 4). But because her allegations did not include any facts supporting a failure to accommodate claim—for example, an allegation that she is disabled—the Court presumed that Drinks-Bruder likely checked that line by mistake, and, in any event,

concluded that she had failed to state a claim based on the failure to accommodate a disability. *See id.*

In her amended complaint, Drinks-Bruder says that she indeed was attempting to assert a discrimination claim based on her employer's "incorrectly perceiv[ing her] as being disabled." Docket Item 34 at 1. While Drinks-Bruder provides little additional context for this claim, *see id.*, the Court assumes that she intends to assert a claim under the ADA and NYSHRL based on the defendants' alleged incorrect perception of her as being mentally unfit, *see Giambattista v. Am. Airlines, Inc.*, 5 F. Supp. 3d 284, 291 (E.D.N.Y. 2014) (noting that a plaintiff is "afforded the protections of the ADA [and NYSHRL] if she demonstrates that her employer perceived her to be disabled and discriminated against her on that false belief").

Drinks-Bruder's allegations*, see* Docket Item 34, nonetheless fail to state a viable claim. She provides no detail about how she was incorrectly perceived or by whom, nor does she plead facts suggesting that any adverse employment action was taken against her based on that perception. *See generally id.* In other words, Drinks-Bruder alleges no facts showing "direct evidence of disability discrimination"—or even "facts that could circumstantially support an inference of discriminatory intent, such as more favorable treatment of a comparator outside the protected class, temporal proximity of events, or departures from regular procedure." *See C.C. v. Google, LLC*, 2025 WL 1938809, at *7 (S.D.N.Y. July 15, 2025) (dismissing plaintiff's disability discrimination claims under the ADA and NYSHRL based on failure to allege such facts). And for that reason, she has failed to state a claim for discrimination based on her actual or perceived disability status under the ADA and New York State law.

**B.   NYSHRL Claims**

"[T]he NYSHRL historically mirrored the standards applicable under its federal counterparts." *Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, 2025 WL 1501751, at *3 (2d Cir. May 27, 2025) (summary order).  But in 2019 "it was amended . . . to 'be construed liberally for the accomplishment of the remedial purposes thereof,' irrespective of the standards courts have applied to federal civil rights laws."  *Id.* (some internal quotation marks omitted) (quoting *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 123 (2d Cir. 2024)).  "The updated NYSHRL is interpreted 'to align with . . . the more liberal pleading standard' applicable to the New York City Human Rights Law" ("NYCHRL").  *Id.* (quoting *Qorrolli*, 124 F.4th at 123).  "Because the conduct underlying [Drinks-Bruder's] claims occurred after August 12, 2019, the effective date of the NYSHRL amendments," the "more liberal framework" applies.[6]  *See id.* (citing N.Y. Exec. Law § 300 and *Golston-Green v. City of New York*, 184 A.D.3d 24, 35 n.1, 123 N.Y.S.3d 656, 665 n.1 (2d Dep't 2020)).

This Court previously held that the complaint failed to state a NYSHRL race discrimination or hostile work environment claim against Lee, Kerfoot, and Spagnolo because—among other reasons—Drinks-Bruder failed to include any specific facts

---

[6] In its prior order, this Court stated that employment discrimination claims under the NYSHRL are generally "analyzed identically to [Title VII] claims," except that hostile work environment claims were subject to a slightly more liberal standard.  *Drinks-Bruder*, 2024 WL 1094980, at *12.  The defendants argue that the Court should analyze the claims in the amended complaint according to the same standard.  *See* Docket Item 37-1 at 11-14; Docket Item 38-1 at 12 n.2.  But in several recent decisions, the Second Circuit has made clear that in light of the 2019 amendments, claims under the NYSHRL are subject to a more liberal pleading standard than parallel Title VII claims.  *See Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025); *Qorrolli*, 124 F.4th at 123.  The Court therefore applies the newer, more liberal NYSHRL standard to Drinks-Bruder's claims here.

showing that those defendants' treatment of her was based on her race.  *See Drinks-Bruder*, 2024 WL 1094980, at *8-10, *12.  And while she stated a NYSHRL claim against the City for retaliation, the Court held that her NYSHRL retaliation claims against the individual defendants were subject to dismissal because she had not alleged that any of them was involved in that alleged retaliation in any way.  *See id.* at *12.

For the reasons explained below, even considering the NYSHRL's more liberal pleading standard, Drinks-Bruder has not alleged any facts regarding Lee's, Kerfoot's, or Spagnolo's actions that remedy the deficiencies in her claims.

### 1.      Race Discrimination and Hostile Work Environment

"[A]lthough the NYCHRL"—and now the NYSHRL—"is broad, 'a plaintiff's mere subjective belief that [s]he was discriminated against because of . . . race does not sustain a race discrimination claim.'"  *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020) (some internal quotation marks omitted) (quoting *Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 309 (E.D.N.Y. 2014)), *aff'd*, 594 F. App'x 29 (2d Cir. 2015) (summary order).  And just as in the original complaint, Drinks-Bruder has failed to offer more than her own say-so in support of her claims that the defendants' conduct was motivated by racial animus.  *See Drinks-Bruder*, 2024 WL 1094980, at *8, *10, *12.  Indeed, while she attempts to support her claims against Spagnolo by alleging that he "sided" with the "white racist violent prisoner," including by allowing the prisoner to use the phone, *see* Docket Item 1 at 23; Docket Item 34 at 16, she does not allege any facts suggesting that Spagnolo himself took any particular action adverse to Drinks-Bruder based in any way on her race, *see generally* Docket

Items 1 and 34.  Nor does she include any facts—as opposed to conclusory statements—suggesting that either Lee or Kerfoot took part in any discriminatory conduct.  *See* Docket Items 1 and 34.  Drinks-Bruder therefore has not stated a viable NYSHRL discrimination claim against Lee, Kerfoot, or Spagnolo.

### 2.   Retaliation

Drinks-Bruder also fails to state a NYSHRL retaliation claim against Lee, Kerfoot, or Spagnolo.  As just noted, NYSHRL claims are analyzed according to a more liberal standard than parallel claims under Title VII.  *See Qorrolli*, 124 F.4th at 122-23.  In connection with a NYSHRL retaliation claim, "[a] plaintiff . . . must demonstrate that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (quoting *Qorrolli*, 124 F.4th at 122).

With regard to Lee and Kerfoot, Drinks-Bruder does not plead any specific actions they allegedly took to retaliate against her.  *See* Docket Items 1 and 34.  With respect to Spagnolo, she says that "upon finding [out] that [she] was going to file a discrimination complaint," he "change[d] his report to purposely harm [her] thus resulting in actions that led to [her] section 72 and 75 [proceedings]."  Docket Item 34 at 27.  But even under the NYSHRL's more liberal pleading standards, these allegations fail to pass muster.

First, Drinks-Bruder does not say that she actually did anything to "oppos[e] her employer's discrimination" before Spagnolo changed the report.  *See id.*; *see also* Docket Item 1 at 22-23.  Instead, she says that he amended the report after he learned

of her *intention* to file "a discrimination complaint."  *See* Docket Item 1 at 22-23.  It is true that the bar for taking an "action," in this context, is not particularly high:  Courts have held that a plaintiff "may . . . oppose[ an employer's] discrimination by 'communicating . . . , in substance, that [certain] treatment . . . was wrong.'"  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 115 (2d Cir. 2013) (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 479, 947 N.E.2d 135, 138 (2011)).  But Drinks-Bruder does not say that she communicated her intent to file a discrimination complaint to Spagnolo or anyone else at her workplace; she says only—perhaps based on nothing more than conjecture—that he learned of her intention to do so.[7]  *See Leroy v. Delta Air Lines*, 2022 WL 12144507, at *3 (2d Cir. Oct. 27, 2022) (summary order) (stating that "[t]o survive a motion to dismiss, a plaintiff claiming retaliation under the NYCHRL must allege that she engaged in protected activity").

---

[7] Indeed, because Drinks-Bruder says nothing about how she communicated her intent to file a complaint based on the November 2019 incident, this Court is unable to assess whether Spagnolo had any notice that she intended to complain of discrimination.  As the Second Circuit has explained, "[e]ven if a complaint is ultimately without merit, lodging the complaint is a protected activity so long as it was 'motivated by a good faith, reasonable belief that the underlying employment practice was unlawful.'"  *Leroy v. Delta Air Lines*, 2022 WL 12144507, at *4 (2d Cir. Oct. 27, 2022) (summary order).  While "[t]hat principle is very forgiving, . . . it does not transform every complaint into activity protected under the NYCHRL[ or NYSHRL, and] . . . 'a plaintiff's belief is not reasonable simply because . . . she complains of something that appears to be discrimination in some form.'"  *See id.* (alterations omitted) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013)); *see also Qorrolli*, 124 F.4th at 125 (dismissing plaintiff's retaliation claim under the NYSHRL because "[i]n each asserted instance of protected activity, [plaintiff's] complaints were overly generic and insufficiently specific and particularized such that [defendants] 'could not reasonably have understood that [she] was complaining of conduct prohibited by Title VII,' the NYSHRL, or the NYCHRL" (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 109 (2d Cir. 2011))).

But even if this Court construes the pleadings liberally to say that she informed Spagnolo of her intent to file a discrimination complaint, she still must show that as a result of that activity, "*[her] employer* engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Edelman*, 141 F.4th at 45 (emphasis added) (quoting *Qorrolli*, 124 F.4th at 122).

As this Court explained in its previous decision, *see Drinks-Bruder*, 2024 WL 1094980, at *12, under the NYSHRL, liability is imposed only on employers and individual employees who "aid, abet, incite, compel[,] or coerce the doing of any of the acts forbidden under" the statute.  N.Y. Exec. Law § 296; *see Bonaffini v. City Univ. of New York*, 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021).

"Under the 'narrow meaning of employer under the [NYSHRL],' [Spagnolo] cannot be held individually liable as an employer."  *See Belyea v. City of Glen Cove*, 2023 WL 1929787, at *3 (E.D.N.Y. Feb. 10, 2023) (quoting *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 458, 167 N.E.3d 454, 459 (2021)).  Indeed, Drinks-Bruder specifically alleges that Spagnolo is an NFPD officer, Docket Item 1 at 22, and so he is "an employee of the City under New York state law" and thus "not [Drinks-Bruder's] employer," *see id.* (citing N.Y. Exec. Law § 292(5)); *see also* N.Y. Exec. Law § 292(5) ("[A] city . . . shall be considered an employer of any employee or official, including any elected official, of such locality's executive.").  And because "an individual cannot aid and abet his . . . own violation" of the NYSHRL, he cannot be liable for any retaliatory conduct in which he was "the principal violator."  *See Baptiste v .City Univ. of N.Y.*, 680 F. Supp. 3d 415, 427 (S.D.N.Y. 2023) (citation omitted) (dismissing plaintiff's claim

against defendant, college president, where plaintiff alleged that president "himself retaliated against her and, thus, that [president] was the principal violator").

So Spagnolo may only be held liable to the extent that his amending of the report aided and abetted the City in retaliating against Drinks-Bruder. A defendant may be held liable for "aiding and abetting" if he "*actually participated* in the conduct giving rise to the claim of discrimination." *Brice v. Sec. Operations Sys., Inc.*, 2001 WL 185136, at *4 (S.D.N.Y. Feb. 26, 2001); *see Fried v. LVI Servs., Inc.*, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011) ("Aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose. Consequently, to find that a defendant actually participated in the discriminatory conduct requires a showing of direct, purposeful participation." (quoting *Brice*, 2001 WL 185136, at *4)).

As explained above, Drinks-Bruder alleges that "Spagnolo . . . change[d] his report to purposely harm [her] thus resulting in actions that led to [her] section 72 and 75 [proceedings]." Docket Item 34 at 27. But she does not explain what "actions" Spagnolo's conduct "result[ed]" in or how those actions "led to" the section 72 and 75 proceedings. *See id.* This is not enough, even under a liberal pleading standard, to establish that Spagnolo "direct[ly]" and "purposeful[ly] participat[ed]" in the allegedly retaliatory actions of the employer. *See Fried v. LVI Servs., Inc.*, 2011 WL 2119748, at *7; *see also Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 289-90 (S.D.N.Y. 2024) (holding that individual defendants—who allegedly "participated in . . . discriminatory comments" could not be held liable for retaliation in absence of facts showing that they

"participated in retaliatory conduct").  So she has failed to allege a retaliation claim against Spagnolo.

In sum, because Drinks-Bruder does not include any new allegations in the amended complaint suggesting that Lee's, Kerfoot's, or Spagnolo's actions toward her were based on her race or that they participated in any retaliatory action against her in response to her protected activity, she has failed to state a NYSHRL claim against any of them.

### C.    Due Process Claims

In an apparent attempt to remedy the deficiencies in Drinks-Bruder's due process claims, the amended complaint includes additional facts about Lee's, Kerfoot's, and Spagnolo's connection to the section 72 and section 75 proceedings.  *See* Docket Item 34 at 27-28.  But those additions do nothing to alter this Court's previous conclusion that although Drinks-Bruder has stated a due process claim based on her suspension, she has not shown that Lee, Kerfoot, or Spagnolo were "personally involved" in the decision to suspend her.  *See Drinks-Bruder*, 2024 WL 1094980, at \*11-12.

"A prerequisite to a claim for damages under [s]ection 1983 . . . is a defendant's 'personal involvement' in the alleged constitutional violation."  *Carwell v. City of New York*, 2023 WL 419182, at \*5 (S.D.N.Y. Jan. 26, 2023) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001)).  To show such involvement, "the plaintiff must directly plead and prove that 'each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  "Being in the chain of command is not sufficient to satisfy personal involvement as the 'violation must be

established against the supervisory official directly.'"  *Belyea*, 2022 WL 3586559, at *21 (quoting *Tangreti*, 983 F.3d at 618).

The new allegations in the amended complaint do not show that Lee, Kerfoot, or Spagnolo were personally involved in the decision to suspend Drinks-Bruder.  *See* Docket Item 34 at 25, 27-28.  Rather, they suggest that those defendants knew about the proceedings that led to her suspension but failed to stop them from taking place. Moreover, Drinks-Bruder does not say that Lee, Kerfoot, or Spagnolo had any authority to stop the proceedings, much less that they took any action in the proceedings or played any role in the decision to suspend her.  *See id.*  And while she asserts—in conclusory fashion—that they were "parties to" the proceedings, she provides no facts to support that contention.  *See id.*

In the absence of allegations showing Lee's, Kerfoot's, or Spagnolo's personal involvement in the denial of her right to due process, Drinks-Bruder has failed to state a due process claim against those defendants.[8]  *See Williams v. Annucci*, 2021 WL 4775970, at *7 (N.D.N.Y. Oct. 13, 2021) (holding that fact that housing director "at some point reviewed, approved, and signed off on [others'] repeated decisions to keep [the p]laintiff in solitary confinement" was not enough to show director's personal involvement in alleged due process violation).

---

[8] Because this Court has held that Drinks-Bruder has not adequately alleged Lee's, Kerfoot's, and Spagnolo's personal involvement, it need not and does not reach those defendants' alternative argument that she has not "plead[ed] facts alleging that [they] were 'acting under color of state law.'"  *See* Docket Item 37-1 at 8-9. Furthermore, because Drinks-Bruder has a claim for punitive damages against Lee, Kerfoot, and Spagnolo only to the extent that she has otherwise stated a claim against them, her claim for punitive damages against those defendants also is dismissed.  *See Drinks-Bruder*, 2024 WL 1094980, at *13.

D.    **Conclusion**

In sum, because the amended complaint has not remedied the deficiencies in the claims against Lee, Kerfoot, or Spagnolo that were identified in this Court's previous decision, the Court grants those defendants' motion to dismiss the amended complaint as against them, Docket Item 37.[9]  And in light of that ruling, it denies as moot Drinks-Bruder's motion to disqualify counsel for those defendants, Docket Item 59; *see Smith v. New Falls Corp.*, 2014 WL 4455051, at *4 n.4 (N.D.N.Y. Sept. 10, 2014) (denying plaintiff's cross-motion to disqualify defendants' counsel as moot in light of court's dismissal of plaintiff's claims as time barred and for failure to state a claim).

III.   **CLAIMS AGAINST THE CITY DEFENDANTS**

A.    **Drinks-Bruder's Motion to Disqualify Counsel**

Drinks-Bruder has moved to disqualify counsel for the City defendants based on an alleged conflict of interest.  *See* Docket Item 61.  More specifically, she says that one of the lawyers representing Lee, Kerfoot, and Spagnolo—Boreanaz—previously represented her (or, as she says, "supposedly represented" her) during the section 72

---

[9] To the extent that Drinks-Bruder's claims against Lee and Kerfoot—as representatives of the Niagara Falls Police Club union—could be liberally construed as claims for breach of the duty of fair representation, those claims are not viable.  *See Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473 (2d Cir. 2016) (explaining that "[a] labor union owes a duty of fair representation to employees it represents" and that it may be liable for breach of that duty).  The proper defendant for such a claim is the union:  Union officers "cannot be held individually liable for a breach of the duty of fair representation."  *See Coureau v. Granfield*, 942 F. Supp. 2d 315, 320 n.2 (E.D.N.Y. 2013) (citing *Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir.1999)), *aff'd*, 556 F. App'x 40 (2d Cir. 2014).  And because Drinks-Bruder has commenced a separate action against the Niagara Falls Police Club, *see Drinks-Bruder v. Niagara Falls Police Club*, Case No. 22-cv-268 (Apr. 6, 2022), the Court does not construe her as bringing a claim against that entity here.

and section 75 proceedings that ultimately resulted in her suspension. *See id.* at 1; *see also* Docket Item 34 at 16. For that reason, she says that Boreanaz should be disqualified from representing any defendant. *See* Docket Item 61 at 2-3. And she says that because Boreanaz is "working with" counsel for the City defendants, all the lawyers representing those defendants should be disqualified as well. *See id.*

In light of its dismissal of the claims against Lee, Kerfoot, and Spagnolo, *see supra* Discussion, Section II, this Court need not and does not reach the issue of whether Boreanaz had a "conflict of interest" that would prevent him from representing any defendant in this case. But even if Boreanaz had such a conflict, Drinks-Bruder has not shown that Boreanaz's conflict would require the disqualification of counsel for the City defendants.

"To disqualify opposing counsel on conflict-of-interest grounds to protect the confidences of a former client, a movant must establish three elements: '(1) the party is a former client of the attorney; (2) the attorney had access to, or was likely to have had access to, relevant privileged information in the course of the alleged prior representation[]; and (3) there is a substantial relationship between the subject matter of the (alleged) prior representation and the issues in the current action.'" *O'Rear v. Diaz*, 2024 WL 3983363, at *5 (S.D.N.Y. Aug. 29, 2024) (quoting *Ello v. Singh*, 2006 WL 2270871, at *3 (S.D.N.Y. Aug. 7, 2006)). "Vague and conclusory allegations are insufficient to meet the burden required to disqualify counsel" based on an alleged conflict of interest. *Persh v. Petersen*, 2015 WL 5773566, at *5 (S.D.N.Y. Oct. 2, 2015)

Drinks-Bruder has offered nothing more than "[v]ague and conclusory allegations" in support of her motion to disqualify counsel for the City defendants. *See*

*id.*  As an initial matter, she does not claim that she was ever a client of either of the City defendants' attorneys she moves to disqualify.  *See* Docket Item 61.  Instead, she says that she "supposedly" was a client of an attorney representing other defendants—defendants who now have been dismissed from this case, *see supra* Discussion, Section II—and that her former attorney had been "working" and "sharing" information with the City defendants' counsel.  Docket Item 61 at 1-3.  Her only evidence of this supposed collaboration is an email thread in which the defendants informed Drinks-Bruder that they would be jointly moving to extend certain deadlines.  *See id.* at 5-6.

"'[A] co-counsel relationship will not alone warrant disqualification,' and the . . . mere status as 'co-counsel' to [counsel with a conflict] does not give rise to a 'presumption of confidence sharing' as a matter of law.*"  Benevida Foods, LLC v. Advance Mag. Publishers Inc.*, 2016 WL 3453342, at *15 (S.D.N.Y. June 15, 2016) (some internal quotation marks omitted) (first quoting *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 235 (2d Cir. 1977); and then quoting *Hempstead Video*, 409 F.3d at 133).  In fact, "[t]o meet [the] high burden of proof to disqualify" counsel based on a co-counsel relationship, a "[p]laintiff must present at least some evidence to th[e c]ourt that would allow it to draw the reasonable inference that the [counsel with the alleged conflict] transmitted [the p]laintiff's confidences to [co-counsel]."  *See id.*; *Hickman v. Burlington Bio-Med. Corp.*, 371 F. Supp. 2d 225, 229 (E.D.N.Y. 2005) ("Speculation regarding the divulging of client confidences will not suffice to grant a motion to disqualify.").

Here, the relationship between Boreanaz and the City defendants' counsel is even more attenuated, since they represent different defendants  *See* Docket Item 61 at

1-3.  And in any event, Drinks-Bruder has offered no such evidence warranting disqualification here.  To be sure, she asserts—in conclusory fashion—that Boreanaz obtained "privileged knowledge" about her through his representation of her and that he shared this information with the other attorneys.  *See* Docket Item 61 at 1-3; Docket Item 65 at 1-4.  But as the City defendants correctly observe, Drinks-Bruder "fails to allege" anything about how Boreanaz obtained or had access to relevant privileged information "during his interactions with her."  *See* Docket Item 68 at 4.

Indeed, it is not clear that there is a "substantial relationship" between the issues here and those involved in the proceedings in which Boreanaz represented Drinks-Bruder.  According to Boreanaz's sworn declaration, he was retained by the Niagara Falls Police Club to represent Drinks-Burder in a limited capacity; more specifically, his representation was limited to "discuss[ing] the [s]ection 72 proceeding with" her, "including her rights if she submitted to the examination and the consequences for not submitting to the examination."  Docket Item 68-1 at ¶¶ 6, 9.  Boreanaz swears that he "did not advise [her] on the [s]ection 72 procedure as part of [a] discrimination in employment claim" or "discuss a strategy to avoid the [s]ection 72 fitness for duty examination."  *Id.*  Later, "with Drinks-Bruder's authorization," he "attempted to reach a resolution of the [s]ection 72 matter on her behalf."  *Id.* at ¶ 11.  So Boreanaz suggests that he had no confidential information to share.

In any event, even assuming that Boreanaz obtained privileged information through the prior representation, Drinks-Bruder has offered no facts showing that he divulged it to the City defendants' counsel.  The fact that counsel for distinct sets of defendants corresponded on an email thread and made certain joint requests about

23

scheduling, *see* Docket Item 61 at 5-6, does not create a presumption that Boreanaz shared any confidential information. And as already noted, Drinks-Bruder's statements to the contrary are entirely conclusory. *See id.* at 1-3.

Drinks-Bruder therefore has failed to meet her heavy burden to show that disqualification of counsel for the City defendants would be appropriate here. *See Benevida*, 2016 WL 3453342, at *15-16 (denying motion to disqualify firm because "[p]laintiff's suggestion that its confidences must have been passed" was "based solely on speculation," noting that plaintiff failed to offer any "direct" or "circumstantial evidence" of information sharing, such as "a long or close working relationship between the [lawyers], or proof of extensive discussions between the two regarding th[e] case"). Her motion to disqualify the City defendants' counsel therefore is denied.

### B.    City Defendants' Motion to Dismiss

Having denied Drinks-Bruder's motion to disqualify the City defendants' counsel, this Court now turns to those defendants' motion to dismiss the amended complaint. Docket Item 38.

The City defendants first argue that Drinks-Bruder's claims all should be dismissed because the "[a]mended [c]omplaint fails to state any viable claim against the[m]" whatsoever. *See* Docket Item 38-1 at 7. But as explained above, in light of its obligation to read pro se pleadings liberally, this Court construes Drinks-Bruder's amended complaint as incorporating the allegations in her original complaint. The Court therefore denies the City defendants' motion to dismiss those claims that the Court previously held were viable: namely, Drinks-Bruder's Title VII retaliation claim against the City; her due process claims against the City, Faso, Licata, and Corcoran; her

NYSHRL retaliation claim against the City; and her punitive damages claims against Faso, Licata, and Corcoran. *See Drinks-Bruder*, 2024 WL 1094980, at *13. And the Court addresses whether any additional facts included in her amended complaint remedy the deficiencies identified in its previous order.

### 1. Failure to Accommodate Claims

The City defendants argue that Drinks-Bruder has failed to state a claim for failure to accommodate—or any claim based on real or perceived disability status. *See* Docket Item 38-1 at 11. For the reasons explained above, *see supra* Discussion, Section II.A, this Court agrees.

### 2. Title VII Claims

In its previous order, this Court dismissed Drinks-Bruder's Title VII claims against all defendants other than the City and held that her claims for race discrimination and a hostile work environment against the City were subject to dismissal.[10] *Drinks-Bruder*, 2024 WL 1094980, at *5-10. More specifically, with respect to her claims for race discrimination and a hostile work environment, the Court held that among other defects, Drinks-Bruder had failed to allege any facts showing that the defendants had treated her differently based on her race. *See id.* at *8-10. It nonetheless granted her leave to amend to include such facts. *See id.* at *13.

As the City defendants argue, *see* Docket Item 38-1 at 12-14, Drinks-Bruder has failed to include in her amended complaint any facts showing that she was

---

[10] The Court also dismissed Drinks-Bruder's retaliation claims to the extent that they were based on events that occurred before March 14, 2020. *Drinks-Bruder*, 2024 WL 1094980, at *7.

discriminated against based on race.  Instead, as in her original complaint, she includes

a number of conclusory statements, and she makes vague assertions that white NFPD

officers were given privileges or benefits that she was denied without providing any

details suggesting that she and those white officers were similarly situated.[11]  *See*

Docket Item 34; *Drinks-Bruder*, 2024 WL 1094980, at *9; *see also Pang v. Ye*, 2024 WL

1298553, at *3 (2d Cir. Mar. 27, 2024) (summary order) (explaining that a Title VII

hostile work environment claim "requires that a plaintiff demonstrate that the hostile

work environment was created due in part to discrimination based on a protected

characteristic" and dismissing claims where plaintiff did not "show[] any 'linkage or

correlation' between any such differential treatment and a protected characteristic"

(quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)), *cert. denied*, 145 S. Ct.

374 (Oct. 15, 2024); *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407

(S.D.N.Y. 2014) (granting motion to dismiss Title VII claims where plaintiff "fail[ed] to

allege facts plausib[ly] indicating that any conduct rising to the level of an adverse

employment action was *because of* race or gender").

Drinks-Bruder therefore has failed to state a Title VII claim against the City.

---

[11] For instance, Drinks-Bruder complains that the charges she filed against a white prisoner were dropped but that a white NFPD officer has never "filed charges on a prisoner" only to have those charges dropped without the officer's involvement.  Docket Item 34 at 16-17.  She further states that "[s]eniority did not matter for a post" that she applied to and did not get, noting that the position "was given to" someone who was either "white" or "not [B]lack," but she provides no other information about that other officer.  *Id.* at 17.  She also says that a white officer prepared a false report about her and that this "happened because [she is B]lack."  *See id.* at 17-18.  And she says that "[w]hite officers were given" certain keys that she was denied.  *See id.* at 25.  For the reasons explained in this decision, none of those allegations are enough.

### 3.    NYSHRL Claims

The Court previously held that Drinks-Bruder failed to state either a race discrimination or hostile work environment claim under the NYSHRL for the same reason that she had failed to state a Title VII race discrimination or hostile work environment claim: namely, that she had failed to allege any facts showing that any of the defendants' alleged conduct was motivated by race.  *See Drinks-Bruder*, 2024 WL 1094980, at *9-10, *12.  And the Court further held that while she had stated a retaliation claim under the NYSHRL against the City, she had failed to allege facts showing that any of the individual defendants were personally involved in that conduct.  *See id.* at *12.  The Court nonetheless gave her leave to amend to add facts addressing those deficiencies.  *See id.* at *13.

#### a.    Race Discrimination and Hostile Work Environment

Even applying the NYSHRL's more liberal pleading standard, Drinks-Bruder's claims still fail for the same reasons explained in the Court's analysis of Drinks-Bruder's Title VII claims above, *see supra* Discussion, Section III.B.2.  More specifically, the amended complaint does not plead facts giving rise to an inference of racial animus.  *See Farmer*, 473 F. Supp. 3d at 330.  Because Drinks-Bruder has offered only conclusory assertions and vague aspersions, she has not stated a race discrimination or hostile work environment claim under the NYSHRL and that claim is dismissed.  *See Cruz v. SEIU Loc. 32BJ*, 2021 WL 3604661, at *6 (S.D.N.Y. Aug. 12, 2021) (holding that plaintiff had not stated "a sufficient discrimination claim against [defendant] under either the NYSHRL or NYCHRL" because all "relevant factual allegations [about discrimination we]re too general and conclusory").

### b.    Retaliation

This Court previously found that Drinks-Bruder had stated a retaliation claim against the City under the NYSHRL based on the "threat[]" that she "would lose benefits plus [her] medical insurance" if she did not withdraw her complaint.  *See Drinks-Bruder*, 2024 WL 1094980, at *9, *12.  But it held that her claims against the individual defendants would be dismissed unless she alleged facts showing that they were personally involved in that retaliation.  *See id.* at *12-13.

The amended complaint does not add any details showing the City defendants' personal involvement in the City's threat.  *See* Docket Item 34.  In both her initial and amended complaint, however, Drinks-Bruder alleges that several of the City defendants—namely, Licata, Faso, Corcoran, and Mazur—retaliated against her for filing various grievances.  Docket Item 1 at 12 (Mazur); *id.* at 15 (Licata); *id.* at 19 (Corcoran); *id.* at 36 (Faso and Licata).  Indeed, she says that those defendants commenced the section 72 proceedings and ultimately suspended her *because* of the discrimination complaints and grievances that she had filed.  *See id.* at 36; *see also* Docket Item 34 at 12.

This Court previously held that those allegations are not enough to state a retaliation claim under Title VII, which requires plaintiffs to allege that they were subject to a materially adverse action.  *See Drinks-Bruder*, 2024 WL 1094980, at *8-9; *see also* *Qorrolli*, 124 F.4th at 122 (explaining difference between pleading requirements for retaliation claims under NYSHRL and Title VII).  But as explained above, to state a claim under the NYSHRL, a plaintiff need only allege that "she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct

that was reasonably likely to deter a person from engaging in such action." *Edelman*, 141 F.4th at 45 (quoting *Qorrolli*, 124 F.4th at 122).

Although it is not entirely clear whether all of the grievances that Drinks-Bruder filed were opposing her employer's discrimination, *see* Docket Item 34 at 7-11, the Court finds it plausible that at least some of those grievances were protected activity and that the retaliatory conduct that she complains of—specifically, the section 72 examination and ensuing suspension—was action by her employer that was "reasonably likely to deter a person from engaging" in protected activity. Whether the evidence will support those allegations is a question for another day. *See Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 662 (E.D.N.Y. 2015) ("Assessing a retaliation claim [under NYCHRL] should 'be made with a keen sense of workplace realities, of the fact that the chilling effect of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct.'" (some internal quotation marks omitted) (quoting *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 71, 872 N.Y.S.2d 27, 34 (1st Dep't 2009))).

So at this stage and in light of the NYSHRL's liberal standard, the Court finds that Drinks-Bruder has stated a claim for retaliation under the NYSHRL against both the City and the individual defendants allegedly involved in retaliating against her: Licata, Faso, Corcoran, and Mazur. Because she does not include any facts suggesting that either Granto or Restaino was involved in any retaliatory conduct against her, *see* Docket Items 1 and 34; *see also infra* Discussion, Section III.B.4, her claims against those defendants are dismissed.

### 4. Due Process Claims

In its previous decision, the Court found that Drinks-Bruder had stated a due process claim against the City, Licata, Faso, and Corcoran. *Drinks-Bruder*, 2024 WL 1094980, at *10-11. But it held that she had failed to allege that any of the other defendants were personally involved in the alleged abridgement of her due process rights and that the due process claims against those defendants therefore were subject to dismissal. *Id.* at *11-12.

The City defendants now argue that Drinks-Bruder has failed to state a due process claim against them because the amended complaint barely mentions the allegations that the Court previously construed to state a viable due process claim. *See* Docket Item 38-1 at 20. For that reason, they contend that this Court should dismiss the due process claims in their entirety against all defendants. *Id.* But this Court has construed the amended complaint as incorporating the allegations of the original complaint, and the Court denies the City defendants' motion to dismiss Drinks-Bruder's due process claim as to the City, Licata, Faso, and Corcoran for the reasons stated in its previous decision. *See Drinks-Bruder*, 2024 WL 1094980, at *10-12.

The City defendants also argue that Drinks-Bruder's amended complaint has not alleged facts showing that the remaining City defendants—Restaino, Granto, and Mazur—were personally involved in any constitutional violation. Docket Item 38-1 at 20-21. As to Restaino and Granto, this Court agrees.

First, as for Granto, Drinks-Bruder concedes that as far as she is aware, he "was not involved with the due process [violation]." Docket Item 34 at 28. Given that concession and the absence of any allegations suggesting Granto's involvement, *see generally id.*, the due process claim against him is dismissed.

As for Restaino, the City's mayor, the amended complaint includes some new allegations, but those allegations do not tip the balance. For example, Drinks-Bruder says that Restaino was involved because she "contacted [him] twice" to "inform[ him] about due process and other issues" related to her suspension and that he "did not take any actions." *Id.* at 25. But she does not provide any specific information about how she contacted the mayor, what she told him, or even whether he received these messages. And in the absence of any such allegations, this Court cannot infer that Restaino was personally involved in violating Drinks-Bruder's rights. *See Stoutenger v. City of Fulton*, 605 F. Supp. 3d 432, 458 (N.D.N.Y. 2022) (holding that plaintiff had not shown that mayor was personally involved based on allegations that mayor "expressed no interest in remediating the discriminatory treatment" and "declin[ed] to take action in response" to plaintiff's complaints (citation and internal quotation marks omitted)); *see also Harrison v. Broderick*, 2022 WL 16837366, at *11 (W.D.N.Y. Aug. 8, 2022) ("Since *Tangreti* was decided, courts within the Second Circuit repeatedly have dismissed claims based on an asserted notification to a supervisory official of an alleged wrong by way of a letter, grievance, or appeal of a disciplinary action."), *report and recommendation adopted*, 2022 WL 16836406 (W.D.N.Y. Nov. 8, 2022).

The City defendants say that the allegations about Mazur are similarly deficient, arguing that Drinks-Bruder "alleges only that he made a comment to . . . Faso about her inability to return to work." Docket Item 38-1 at 20. But liberally construed, the amended complaint says not just that Mazur made a statement about Drinks-Bruder's suspension but that he was involved in the decision to suspend her, specifically by instructing Faso not to let her return to work. *See* Docket Item 34 at 25, 27. And while

Drinks-Bruder does not include much detail on this point, the Court finds that this allegation is sufficient at this stage to plead that Mazur was personally involved in the alleged due process violation.  It therefore grants the City defendants' motion to dismiss the due process claims against Granto and Restaino but denies that motion as to the due process claim against Mazur.[12]

## CONCLUSION

For the reasons stated above, to the extent that Drinks-Bruder seeks to amend her initial disqualification motions to include additional information, *see* Docket Items 60, 63, and 65, those motions are GRANTED.  Lee, Kerfoot, and Spagnolo's motion to dismiss the amended complaint, Docket Item 37, is GRANTED, and Drinks-Bruder's motion to disqualify counsel for those defendants, Docket Item 59, is DENIED as moot. Drinks-Bruder's motion to disqualify counsel for the City defendants, Docket Item 61, also is DENIED.  The City defendants' motion to dismiss the amended complaint, Docket Item 38, is GRANTED IN PART and DENIED IN PART.  More specifically, it is DENIED as to Drinks-Bruder's Title VII retaliation claim against the City; her due process claims against the City, Faso, Licata, Corcoran, and Mazur; her NYSHRL retaliation claim against the City, Faso, Licata, Corcoran, and Mazur; and her punitive damage claims against Faso, Licata, Corcoran, and Mazur.  And it is GRANTED as to her failure to accommodate claim; her Title VII claims for race discrimination and a hostile work environment; her due process claims against Granto and Restaino; her

---

[12] Because Drinks-Bruder has stated a due process claim against Mazur, her claim for punitive damages against him may proceed as well.  On the other hand, her punitive damage claims against Granto and Restaino are dismissed.

NYSHRL claims for race discrimination and a hostile work environment; her NYSHRL retaliation claims against Granto and Restaino; and her punitive damage claims against Granto and Restaino.

The Clerk of the Court shall remove Lee, Kerfoot, Spagnolo, Granto, and Restaino as defendants in this case.  The remaining defendants shall answer the amended complaint (including the claims in the original complaint) within 14 days of the date of this order.


SO ORDERED.

Dated:   August 21, 2025
         Buffalo, New York


                                          /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE